IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| KERRY FRANCO,<br>TDCJ No. 1202072, | § § § | |
| Plaintiff, | § | CIVIL ACTION NO. |
| v. | § § | SA-08-CV-0262 NN |
| PAUL MORALES, Warden;<br>JUAN NUNEZ, Captain;<br>ADAM CRUZ, Correctional Officer; and<br>LAURIE SMITH, LVN, | § § § § § | |
| Defendants. | § | |

## ORDER ON PENDING MOTIONS

This order addresses the pending motions in this case: (1) plaintiff Kerry Franco's request for documents,[1] (2) the defendants' motion for summary judgment,[2] and (3) Franco's motion for an extension of time.[3] Because of the inter-relatedness of the motions, this order address all of the motions.

### Nature of the Case

At the time of the incident giving rise to this lawsuit, Franco was an inmate at the Texas Department of Criminal Justice's Connally Unit, housed in the administrative segregation unit. On December 21, 2007, Franco was the subject of a use-of-force by the Connally Unit staff because Franco refused to remove his arm from the food-tray slot in the door to his cell. Based

---

[1]Docket entry # 13.

[2]Docket entry # 18.

[3]Docket entry # 32.

on that incident, Franco filed this lawsuit under 42 U.S.C. § 1983.

Franco sued four defendants: (1) Paul Morales, Warden of the Connally Unit; (2) Captain Juan Nunez; (3) Corrections Officer Adam Cruz; and (4) Nurse Laurie Smith. After making their initial disclosures as required by the Federal Rules of Civil Procedure,[4] the defendants moved for summary judgment based on grounds of qualified immunity. Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[5] Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[6]

## Claims against Warden Morales

After a defendant moves for summary judgment based on qualified-immunity grounds, the trial judge must first determine whether the plaintiff has alleged the violation of a clearly established constitutional right.[7] "A court required to rule upon the qualified immunity issue must consider . . . this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"[8] If the

---

[4]*See* docket entry # 21.

[5]*Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

[6]Fed. R. Civ. P. 56(c).

[7]*See Siegert v. Gilley*, 500 U.S. 226, 231 (1991).

[8]*Saucier v. Katz*, 533 U.S. 194, 201 (2001).

plaintiff has not alleged the violation of a clearly established constitutional right, the governmental officer is shielded from suit by qualified immunity.

In this case, Franco bases his claim against Warden Morales on the theory that the warden was required to investigate violations of the Connally Unit's procedural rules. Franco maintains that the procedural rules required staff to contact a psychologist prior to using force to get him to remove his arm from the food-tray slot and that the procedural rules prohibited Officer Cruz from participating in the use-of-force because Cruz had a prior conflict with Franco. These allegations address procedural rules rather than a constitutional right as required for a claim under 42 U.S.C. § 1983. Thus, Franco's claim against Warden Morales does not allege the violation of a clearly-established constitutional right. Because Franco's allegations against Warden Morales do not allege a violation of a clearly-established constitutional right, Warden Morales is shielded from this lawsuit by qualified immunity.

### Claims against Captain Nunez

Franco did not clearly articulate the legal basis of his claim against Captain Nunez, but Franco's allegations are reasonably construed as alleging a violation of the Eighth Amendment's prohibition of cruel and unusual punishment. "After incarceration, only the 'unnecessary and wanton infliction of pain' . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment."[9] Franco alleges that Captain Nunez used an excessive amount of chemical agent in attempting to get Franco to remove his arm from the food-tray slot and that Nunez permitted a five-man use-of-force team to use excessive force when Franco refused to remove his arm. These allegations are sufficient to allege the violation of a clearly-established constitutional

---

[9] *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (internal citations omitted).

right—the Eighth Amendment's prohibition of cruel and unusual punishment. Because Franco alleged the violation of a clearly-established constitutional right, the court must next consider whether Captain Nunez's conduct was objectively unreasonable.[10]

When an inmate alleges a prison official used excessive physical force in violation of the Eighth Amendment, the trial court must determine whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.[11] Ordinarily, a court making a determination about qualified immunity must view the plaintiff's allegations as true, but "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."[12] In his complaint, Franco characterizes himself as a victim of "a quick desire to spray gas and use[] an excessive amount of [gas]" as well as an excessive use of force once his cell door was opened,[13] but the video tape of the use-of-force does not reflect a victim. The video tape shows that Captain Nunez repeatedly ordered Franco to remove his arm from the food-tray slot. Captain Nunez warned Franco that he would use force to make Franco remove his arm if he did not comply with his verbal orders. Rather than remove his arm, Franco indicated his

---

[10]*See Rankin v. Klevenhagen*, 5 F.3d 103, 108 (5th Cir. 1993) (describing second prong of the qualified-immunity test as: "Whether a defendant asserting qualified immunity may be personally liable turns on the objective legal reasonableness of the defendant's actions assessed in light of clearly established law.").

[11]*Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992).

[12]*Scott v. Harris*, 127 S. Ct. 1769, 1776 (2007).

[13]Docket entry # 2, p. 6.

4

unwillingness to comply with Captain Nunez's orders by making obscene comments and gestures. When verbal instructions failed, Captain Nunez sprayed Franco with chemical agent. The video tape shows Franco planned for non-compliance. Franco covered his head with a towel and held some other type of fabric over his mouth so that he could continue to resist. Franco was clearly determined and prepared for noncompliance. Despite repeated sprays over a 20-minute period, Franco refused to comply with Captain Nunez's instructions. Faced with continued defiance, Nunez called for a five-man use-of-force team.

Nunez gave the order to roll the cell door, but the door would not open because Franco had jammed the door with fabric strips from his bed sheet. It took 20 minutes and metal tools for Captains Nunez and Easely to remove enough bed sheet to open the door. During their efforts to open the door, Franco waved his arm, swiping at the correctional staff and forcing the five-man team to shield Captains Nunez and Easely so they could work to open the door.

When the door finally opened, the five-man team rushed in, pushed Franco back into the cell onto the ground, and cuffed Franco's wrists and ankles. As the team rushed into the cell, Franco threw both of his shoes at the team, striking Officer Cruz—the first man in—in the face shield. The team was in the cell for one minute. Captain Nunez did not enter the cell until after Franco was removed from the cell, and then to inspect the cell. The video tape does not reflect a rush to use either chemical spray or force. Instead, the video tape reflects a tempered and disciplined approach to end the violation of prison rule. The video tape reflects a good-faith effort to maintain or restore discipline. The video tape leaves no question that Captain Nunez applied force in a good-faith effort to restore discipline and he acted in an objectively reasonable manner. Captain Nunez is shielded from this lawsuit by qualified immunity.

**Claims against Officer Cruz**

Franco contends that Cruz used an excessive amount of force when he entered Franco's cell. Franco alleges that after he was under control, Cruz beat Franco in the face and poked his finger in Franco's eye in an attempt to pull out his eyeballs. These allegations state a violation of the Eighth Amendment's prohibition against cruel and unusual punishment because deliberately pulling out an inmate's eyeballs would constitute an unnecessary and wanton infliction of pain. Because Franco alleged a violation of a clearly-established constitutional right, the court must determine whether Cruz's conduct was objectively reasonable. Unlike the allegations against Captain Nunez, the video tape is not determinative of whether Officer Cruz acted in an objectively reasonable manner. Because Franco's allegations against Cruz focus on Cruz's conduct after he entered the cell, and because the bodies of the other four members of the use-of-force team blocked the camera operator's view of Cruz, the video tape does not substantiate or contradict Franco's allegations. The video tape shows Cruz enter the cell with both hands on a shield, but a viewer cannot determine what Cruz did with his hands once he fell onto Franco. In the absence of summary-judgment evidence demonstrating the objective reasonableness of Cruz's conduct, the court must accept Franco's allegations as true.[14] Viewed as true, Franco's allegations raise a fact question about whether Cruz's actions were objectively reasonable. At ths point, the record does not show that Cruz is shielded by qualified immunity.

**Claims against Nurse Smith**

Franco accuses Nurse Smith of deliberate indifference to his serious medical needs.

---

[14]*See Scott*, 127 S. Ct. at 1776 ("At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts.").

Franco complains that despite bleeding from the face and eyes, Nurse Smith wiped the blood off of his face and permitted staff to return him to his cell untreated. A prison nurse violates the Eighth Amendment's prohibition against cruel and unusual punishment when her conduct demonstrates deliberate indifference to an inmate's serious medical needs, constituting an unnecessary and wanton infliction of pain.[15] Franco alleged a violation of the Eighth Amendment's prohibition against cruel and unusual punishment because he alleged Nurse Smith was deliberately indifference to his serous medical needs, but he did not specify a serious medical need.

The video tape shows that Nurse Smith was present when Franco was removed from his cell. Because Franco's face was bleeding, Nurse Smith used what remained of Franco's bed sheet to wipe blood from Franco's face. Nurse Smith questioned Franco about his injuries and Franco told Nurse Smith that he could not see. Because chemical spray often blurs a person's vision, Nurse Smith determined Franco's injuries were superficial, released him for return to his cell, and scheduled a follow-up examination. Nurse Smith documented the results of her examination in a use-of-force nursing note, observing "Patient denies any injuries and denies respiratory difficulty. No respiratory distress noted. Multiple abrasions noted to head: none requiring medical attention. No adverse effects from use of force."[16] The photos taken of Franco when he was removed from his cell[17] and the video tape support Nurse Smith's assessment. The

---

[15] *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006). *See Estelle v. Gamble*, 429 U.S. 97, 104 1976) ("[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment.").

[16] Docket entry # 18, exh. C.

[17] *Id*., exh. A, p. 33.

clinic notes for Franco's follow-up examination six days later also support Nurse Smith's assessment of Franco's injuries. The notes read: "Rt eye red conjunctiva swollen. . . . No medical intervention required."[18] In other words, the mucous membrane that lines the inner surface of the Franco's right eyelid, and continues over the forepart of the right eyeball, was inflamed. The Centers for Disease Control and Prevention has indicated that such inflammation is common after the use of a chemical agent. According to the CDC's fact sheet on chemical agents, the effects of chemical agents such as the one used on Franco is usually temporary, although exposure to a large dose of such agents in a closed setting can have a long-lasting effect.[19] The photos and video do not suggest a long-lasting effect or a serious medical need. Even if the use of the chemical spray has had a long-lasting effect on Franco, Nurse Smith's failure to recognize a long-lasting effect would not evidence deliberate indifference. A prison nurse "cannot be found liable under the Eighth Amendment for denying an inmate [medical treatment] unless [she] knows of and disregards an excessive risk to inmate health or safety; the [nurse] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [she] must also draw the inference."[20] Franco contends that his injuries required a later referral to another prison unit for an eye examination,[21] but the summary-judgment evidence does not reflect a serious medical need or deliberate indifference.

---

[18] *Id*. (report for 12/27/2007).

[19] *See* CDC Fact Sheet, Facts About Riot Control Agents, Interim document, available at http://www.bt.cdc.gov/agent/riotcontrol/factsheet.asp.

[20] *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

[21] *See* docket entry # 22.

Consequently, Nurse Smith is shielded from this lawsuit by qualified immunity.

**Franco's Motion for Extension of Time**

Five months after the defendants moved for summary judgment, Franco asked for a 30-day extension of time to respond to the defendants' motion. The court does not need a response because the video tape demonstrates that Warden Morales, Captain Nunez and Nurse Smith are shielded from this lawsuit by qualified immunity and because Franco's allegations preclude summary-judgment on qualified-immunity grounds as to Officer Cruz. In the future, Franco should respond to a motion within the 11-day time period permitted by the Local Rules for this district.[22] If Franco cannot file his response within the 11-day response time, he should ask for an extension of time before the deadline for responding expires.

**Franco's Request for Documents**

When a defendant in a section 1983 case relies on the defense of qualified immunity, discovery is ordinarily delayed until a court determines whether the plaintiff has alleged the violation of a clearly-established constitutional right.[23] With that question resolved by this order, the court can consider Franco's request for documents. In his request, Franco asked for numerous documents, photographs and videos. Some of the information Franco sought relates to claims against defendants who are shielded by qualified immunity. Franco is not entitled to discovery on those matters—e.g., information about the use of chemical agents, medical records

---

[22]*See* Local Rule CV-7(d) ("If any party opposes a motion, the respondent shall file a response and supporting documents as are then available within eleven (11) days of service of the motion. . . . If there is no response filed within the time period prescribed by this rule, the Court may grant the motion as unopposed.").

[23]*Siegert*, 500 U.S. at 231 ("Until this threshold immunity question is resolved, discovery should not be allowed.").

about psychiatric treatment prior to the use-of-force, prison policy about the use of chemical agents, prison policy requiring the approval by a psychologist prior to a use-of-force, prison policy about who may participate in a use-of-force, and prison procedures about providing medical treatment. But Franco is entitled to discover information relevant to his claim against Officer Cruz—specifically, the information requested by paragraphs 1, 3, 5, 9 and 11 of Franco's motion.

## Summary of the Court's Orders

Because the video tape of the use-of-force demonstrates that qualified immunity shields Warden Morales, Captain Nunez and Nurse Smith from this lawsuit, I GRANT the motion for summary judgment (docket entry # 18) as to those defendants and enter summary judgment in favor of those defendants. I DENY the motion as to Officer Cruz because Franco's allegations against Cruz focus on the time the five-man team was in Franco's cell, and because the video tape is inconclusive as to Cruz's conduct in the cell. Franco may pursue his claim against Officer Cruz.

I GRANT Franco's request for documents (docket entry # 13) as to the following numbered paragraphs of Franco's motion: 1, 3 (to the extent discovery does not conflict with the guidance in the previous paragraph), 5, 9 and 11. Officer Cruz shall produce responsive information by **February 20, 2009.** I DENY the request for documents in all other respects.

I DENY Franco's request for an extension of time to file a response (docket entry # 32).

These matters decided, I LIFT the stay entered in this case[24] and I ENTER the following revised scheduling order:

---

[24]Docket entry # 31.

1. The parties shall complete all discovery on or before **March 30, 2009.** The parties may by agreement continue discovery beyond the deadline, but there will be no intervention by the Court except in extraordinary circumstances. By this order the Court expressly permits the parties to tape-record oral and telephonic depositions to be transcribed by any notary in lieu of use of live court reporters.

2. All dispositive motions shall be filed no later than **April 30, 2009**. Dispositive motions as defined in Local Rule CV-7(h) and responses to dispositive motions shall be limited to 20 pages in length.

3. On or before **April 30, 2009**, Franco shall file and serve on opposing counsel a "motion for witnesses," listing the name, address and TDCJ number, if appropriate, of any witness who Franco intends to call at trial, together with a detailed narrative summary of each proposed witness' testimony. The court will issue the necessary writs to secure the presence of witnesses, either live or by video-conferencing, at trial if the testimony is found to be material and not repetitive.

4. After the resolution of dispositive motions, the court will notify the parties by separate order regarding trial. The parties should consult Local Rule CV-16(e) regarding matters to be filed in advance of trial.

**SIGNED** on January 22, 2009.

_____
NANCY STEIN NOWAK
UNITED STATES MAGISTRATE JUDGE